UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JIM G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 1:18-CV-03087-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 15. Attorney D. James Tree represents Jim G. (Plaintiff); Special Assistant United States Attorney Erin Frances Highland represents the Commissioner of Social Security (Defendant). The parties consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on March 31, 2014, Tr. 102, alleging disability since September 5, 2009, Tr. 202, due

ORDER GRANTING PLAINTIFF'S MOTION - 1

to an irregular heartbeat, depression, severe lower back pain, chronic migraines, knee pain, and hepatitis A. Tr. 275. The applications were denied initially and upon reconsideration. Tr. 135-42, 146-51. Administrative Law Judge (ALJ) Keith Allred held a hearing on January 10, 2017 and heard testimony from Plaintiff and vocational expert Steven Cardinal. Tr. 45-75. The ALJ issued an unfavorable decision on March 24, 2017. Tr. 17-37. The Appeals Council denied review on March 29, 2018. Tr. 1-5. The ALJ's March 14, 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on May 24, 2018. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 49 years old at the date of application. Tr. 202. He completed the twelfth grade in 1984. Tr. 276. His reported work history includes gutter hanger, general laborer, press brake operator, and roofer. *Id*. When applying for benefits Plaintiff reported that he stopped working on September 5, 2009 because of his conditions. Tr. 275. At his hearing, he stated that he stopped working to return to Missouri to care for his ill father, but that "I was having problems mainly at work. I started, I was spitting blood up and some other stuff and I think I was stretched." Tr. 54.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

# ADMINISTRATIVE DECISION

On March 24, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from March 31, 2014 through the date of the decision.[1]

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 31, 2014, the date of application. Tr. 20.

At step two, the ALJ determined that Plaintiff had the following severe impairments: "recurrent arrhythmias, sprains and strains, disorder of urinary tract, cervical and lumbar radiculopathy, affective disorder, migraine headaches, and substance abuse disorders." Tr. 21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday and stand and/or walk for 6 hours in an 8-hour workday with normal rest breaks; occasionally climb ramps and stairs, balance, stoop, bend, squat, kneel, and crouch; never crawl or climb ladders, ropes, or scaffolds; can never use the left upper extremity for overhead reaching, but frequently for reaching at waist level in other directions; and can have no exposure to vibrations, fumes, or hazards. He is able to perform the basic mental demands of competitive, unskilled work, including the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. He requires work that involves only occasional interaction with the general public, and not more than frequent interaction with a supervisor and coworkers.

---

[1] The ALJ addressed Plaintiff's prior 2013 application and declined to reopen the October 28, 2013 denial. Tr. 17.

Tr. 27-28. The ALJ found that Plaintiff had no past relevant work. Tr. 35.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of electrical accessories assembler, small parts assembler, and mail clerk. Tr. 36. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from March 31, 2014, through the date of the ALJ's decision. Tr. 36-37.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to address Plaintiff's personality disorder and bilateral knee impairment at step two, (2) failing to properly weigh the medical opinions, and (3) failing to properly weigh Plaintiff's symptom statements.

## DISCUSSION[2]

### 1. Step Two

Plaintiff challenges the ALJ's step two determination arguing that she failed to find Plaintiff's bilateral knee impairments and personality disorder were

---

[2] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

medically determinable. ECF No. 14 at 4-6.

At step two of the sequential process, the ALJ must determine whether a claimant suffers from a "severe" impairment. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). If the claimant fulfills this burden, the ALJ must find the impairment "severe." *Id*.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted).

Plaintiff asserts that the ALJ erred by failing to find his impairments medically determinable. ECF No. 16 at 2-4. Defendant argues that the ALJ found the impairments to be medically determinable, but not severe. ECF No. 15 at 2-3.

Turning to the ALJ's decision, it is difficult to ascertain whether he found the bilateral knee impairment medically determinable. First, the ALJ set forth his finding of the severe impairments: "recurrent arrhythmias, sprains and strains, disorder of urinary tract, cervical and lumbar radiculopathy, affective disorder,

migraine headaches, and substance abuse disorder." Tr. 20. He then stated: "I have considered every medically determinable impairment of which I am aware in reaching my assessment of the claimant's residual functional capacity, whether I find it to be severe or non-severe." *Id*. He then addressed the period prior to the filing date, stating "There are essentially no musculoskeletal or neurological abnormalities noted during this period." Tr. 22. He specifically addressed Plaintiff's knees six times: (1) "Knee x-rays taken during this earlier period were also negative for any significant abnormalities. (Ex 5F/11);" (2) "Bilateral knee and right elbow x-rays were negative, . . . (Ex 26F/5-8);" (3) "In June, the claimant also presented with knee complaints, but he was still assessed to have intact strength and sensation. Ex 27F/35);" (4) "the claimant underwent an examination in April 2016, which did demonstrate some range of motion issues, but nothing of an extreme extent. (Ex 23F/103-104). . . . tenderness to palpation was noted along with a misalignment of the ACL joint. (23F/114);" (5) "in August, the claimant was ambulatory. (Ex 24F/10);" and (6) "the claimant was again assessed to have normal strength and sensation with a pain level only at 1 out of 10. (Ex 27F/16)." Tr. 22. As a conclusion, the ALJ addressed all the musculoskeletal impairments by stating "As with the cardiovascular condition, such a record is supportive of severity, but it is not indicative of extreme limitations alleged." Tr. 22. Earlier, the ALJ determined that Plaintiff's alleged cardiovascular condition as "generally indicative of an impairment that would have a limited effect upon the claimant; however, . . . it is not as limiting as alleged." Tr. 21.

The ALJ's discussion of Plaintiff's various musculoskeletal impairments is difficult to review. He addressed all the musculoskeletal impairments at once, Tr. 22, found "sprains and strains" and "cervical and lumbar radiculopathy" as severe, Tr. 20, and made a general statement that he "considered every medically determinable impairment," Tr. 20. First, the ALJ's general finding of "sprains and strains" is unreviewable. This impairment is not specific enough for the Court to

ascertain what part of the body suffered "sprains and strains" to correlate to any specific limitation in the residual functional capacity determination. A "sprain and strain" in a lower extremity joint would result in different limitations than a "sprain and strain" in an upper extremity joint. Second, every time Plaintiff's alleged bilateral knee impairment was addressed it was accompanied with generally negative findings. Tr. 22. Therefore, the ALJ's assertion that he considered all medically determinable impairments, Tr. 20, is not sufficient for the Court to ascertain if the bilateral knee impairment was found as medically determinable. Third, the ALJ seems to address Plaintiff's credibility and whether or not the impairment was work preclusive: "such a record is supportive of severity, but it is not indicative of the extreme limitations alleged." Tr. 22. This is the incorrect standard at step two, which requires the ALJ to determine whether the alleged impairments are medically determinable and severe. *Webb*, 433 F.3d at 687 (The step-two analysis is "a de minimis screening device.").

Likewise, the ALJ generally addressed Plaintiff's "mental conditions" as a single impairment and stated: "taken as a whole such a record is supportive of severity, but it is inconsistent with allegations of mental conditions that would essentially preclude the claimant from work." Tr. 24. Again, the ALJ is applying the incorrect standard at step two. *Webb*, 433 F.3d at 687 (The step-two analysis is "a de minimis screening device.").

The ALJ erred by failing to clearly identify the medically determinable impairments at step two. *Brown-Hunter v. Colvin*, 806 F2.3d 487, 492 (9th Cir. 2015) ("we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"). The case is remanded for the ALJ to clearly identify (1) those impairments he finds medically determinable and (2) of the medically determinable impairments, those that he finds severe.

**2. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical

opinions expressed by Jeremiah Crank, M.D., Ronald Dougherty, Ph.D., Thomas Genthe, Ph.D., Janis Lewis, Ph.D., Philip Barnard, Ph.D., Aaron Burdge, Ph.D., Luci Carstens, Ph.D., Christmas Covell, Ph.D., and John Robinson, Ph.D. ECF No. 14 at 6-18.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather

than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A. Jeremiah Crank, M.D.

In June of 2013, Dr. Crank completed a Physical Functional Evaluation form for the Department of Social and Health Services (DSHS). Tr. 391-95. He diagnosed Plaintiff with lower back pain from back and bilateral knee impairments and headaches. Tr. 392. He opined that plaintiff was "Severely limited" defined as "Unable to meet the demands of sedentary work." Tr. 393. He estimated that Plaintiff's current limitation would persist for twelve months with available treatment. *Id*. He additionally found that the current impairments were primarily the result of alcohol or drug use within the past sixty days and when asked if the current level of impairment would be expected to persist following 60 days of sobriety, he checked both "Yes," and "No." *Id*.

On March 30, 2016, Dr. Crank completed a second Physical Functional Evaluation form for DSHS. Tr. 754-58. He listed Plaintiff's diagnosis as cervical/lumbar radiculopathy/degenerative disc disease and possible herniated disc. Tr. 755. He opined that Plaintiff was "Severely limited," which is defined as "Unable to meet the demands of sedentary work." Tr. 756. Dr. Crank stated that Plaintiff's impairments were not the result of alcohol or drug use in the past sixty days. *Id*.

The ALJ gave the opinions little weight because (1) they were inconsistent with the record as a whole, (2) they were inconsistent with the doctor's own findings, (3) Dr. Crank did not review the opinion of W. Jack Lovern, (4) Dr. Crank provided no explanation for the inconsistencies between his opinions and his treatment notes, and (5) Dr. Crank failed to provide an explanation as to why his opinions were inconsistent with that of Dr. Anna Espiritu. Tr. 34. The parties agree that Dr. Crank was a treating physician. ECF Nos. 14 at 7; 15 at 5. However, they disagree as to whether the ALJ's reasons meet the lesser standard of

specific and legitimate.

The ALJ's first reason for rejecting the opinions, that they were inconsistent with the record as whole, fails to meet the specific and legitimate standard. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting a physician's opinion. *Batson*, 359 F.3d at 1195. Defendant accurately points out that the ALJ provided citations to the record. ECF No. 15 at 5-6. However, he provided a citation to over three hundred pages of the record without any discussion. Tr. 34. The conclusion that the opinion was inconsistent with the record followed by a citation to the majority of the medical evidence in the record and no additional discussion is not specific and legitimate.

The ALJ's second reason for rejecting the opinions, that they were inconsistent with doctor's own findings, is not specific and legitimate. An ALJ may cite internal inconsistencies in evaluating a physician's report when rejecting an opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ found the opinions to be inconsistent with treatment notes showing Plaintiff was receiving no pain from his atrial fibrillation. Tr. 34. On June 20, 2013 and March 30, 2013, Dr. Crank wrote in his treatment notes that the atrial fibrillation was asymptomatic. Tr. 397, 759-60. However, Dr. Crank's opinion was based on the impairments of lower back pain, bilateral knee pain, and severe headaches. Tr. 392, 755. Therefore, the symptoms of Plaintiff's atrial fibrillation are immaterial to the opinions.

The ALJ's third reason for rejecting the opinions, that Dr. Crank did not review the opinion of W. Jack Lovern, M.D., is not specific and legitimate. On September 9, 2013, Dr. Lovern from Yakima Urology Associates, PLLC completed a physical evaluation that showed no abnormalities. Tr. 426-27. First, Dr. Lovern's opinion postdates Dr. Crank's June 2013 opinion. Therefore, Dr. Crank could not have reviewed the opinion prior to writing the June 2013 opinion. Second, Dr. Lovern was performing a urological consultation. Tr. 426. While the

musculoskeletal evaluation was normal in Dr. Lovern's September 9, 2013 evaluation, Dr. Crank completed his own range of motion testing as part of the March 30, 2016 opinion, which showed a limited range of motion in Plaintiff's back, neck, hips, and knees. Tr. 757. Dr. Crank's failure to discuss Dr. Lovern's evaluation three years later when addressing the current relevant period is immaterial.

The ALJ's fourth reason for rejecting the opinions, that Dr. Crank provided no explanation for the inconsistencies between his opinion and his treatment notes, is not specific and legitimate. An ALJ may cite internal inconsistencies in evaluating a physician's report when rejecting an opinion. *Bayliss*, 427 F.3d at 1216. However, the ALJ failed to state how Dr. Crank's opinions were inconsistent with his treatment notes. Tr. 34. Therefore, Dr. Crank's lack of explanation is not a specific and legitimate reason to reject his opinions.

The ALJ's fifth reason for rejecting the opinions, that Dr. Crank failed to provide an explanation as to why his opinions were inconsistent with that of Dr. Anna Espiritu, is not specific and legitimate. Dr. Espiritu completed a Physical Functional Evaluation form for DSHS on October 24, 2012. Tr. 329-31. She opined that Plaintiff's physical impairments were mild to moderate and limited Plaintiff to medium work. Tr. 330-31. However, Dr. Crank's failure to discuss the 2012 opinion has little bearing on the reliability of his 2016 opinion. The ALJ determined that the prior application was denied as of October 28, 2013 and refused to reopen the application. Tr. 17. Therefore, the medical evidence prior to the current application pertains to an already adjudicated period and does not pertain to the current period at issue. This is not a specific and legitimate reason. Upon remand, the ALJ will readdress Dr. Crank's opinion.

### B. Ronald Dougherty, Ph.D.

On March 5, 2015, Dr. Dougherty completed a Psychological Evaluation for Social Security. Tr. 641-48. He diagnosed Plaintiff with alcohol dependence,

methamphetamine dependence, cannabis abuse, polysubstance dependence, major depressive disorder, adjustment disorder with anxiety, and antisocial personality traits. Tr. 647. Dr. Dougherty found that Plaintiff's social skills appeared to be good, he was able to do detailed and complex tasks, accept instructions from supervisors, interact with coworkers, and interact with the public. Tr. 648. He also opined that Plaintiff "may have some difficulty maintaining regular attendance in the workplace or in completing a normal workday/workweek without interruptions from his depressive disorder, though his continued use of substances and medical problems are likely to be the principal impediment to this." *Id*. He also stated that Plaintiff "may have some difficulty dealing with the stress encountered in the workplace due to his depressive symptoms and distrust of others." *Id*.

The ALJ gave the opinion great weight except for the attendance portion of the opinion. Tr. 32. The ALJ found that Dr. Dougherty's opinion regarding attendance was not supported by the record, stating "[t]here is no consistent indication within the record that the claimant had significant mental problems making it to treatment," and that Plaintiff was now sober, "which would suggest that attendance would not be an issue." *Id*. First, the ALJ's finding that the ability to attend treatment is analogous to the ability to attend to full-time work has been deemed unsupported by the Ninth Circuit. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (recognizing that a claimant has more flexibility in scheduling activities and can receive help with activities where this flexibility and help would not necessarily be available in a full-time job).

Second, the ALJ's conclusion that the limitation has been cured by Plaintiff's reported sobriety, this is an incorrect application of S.S.R. 13-2p. The S.S.R. requires the ALJ to first complete the five-step sequential evaluation process with all limitations, including those that result from substance abuse, and if the claimant is disabled, then complete a new five-step sequential evaluation removing limitations that stem from substance abuse. S.S.R. 13-2p. Here, the ALJ

disregarded the attendance because he determined it was caused by substance abuse. Tr. 32. This is not a valid reason to reject Dr. Dougherty's opinion, but addresses the materiality of Plaintiff's substance abuse and should be addressed in accord with S.S.R. 13-2p.

### C. Thomas Genthe, Ph.D.

On April 8, 2014, Dr. Genthe completed a Psychological/Psychiatric Evaluation form for DSHS. Tr. 585. He diagnosed Plaintiff with major depressive disorder, methamphetamine use disorder, and alcohol use disorder. Tr. 587. He opined that Plaintiff had marked limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision and to communicate and perform effectively in a work setting. *Id*. Additionally, he opined that Plaintiff had a moderate limitation in four basic work abilities. *Id*. The ALJ assigned little weight to the opinion because the marked limitations were inconsistent with the record as a whole and inconsistent with intact mental examination findings and the GAF score in Dr. Genthe's evaluation. Tr. 33.

The ALJ's first reason for rejecting the opinion, that it was inconsistent with the record as a whole, is not specific and legitimate. The ALJ made a general statement that the opinion was inconsistent with the evidence and then cited to fourteen exhibits. Tr. 33. Citing to such a large amount of evidence with no discussion as to what specific evidence undermines the opinion is not legally sufficient.

The ALJ's second reason for rejecting the opinion, that it was inconsistent with the mental examination findings and the GAF score in Dr. Genthe's evaluation, is not specific and legitimate. When discussing the mental examination findings in Dr. Genthe's evaluation, the ALJ failed to state how the evaluation was inconsistent with the opinion. Tr. 33. Dr. Genthe assigned Plaintiff a GAF score of 50. Tr. 587. A GAF score between 41 and 50 demonstrates "serious symptoms

(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34. The ALJ failed to discuss how Dr. Genthe's opinion was inconsistent with a GAF score of 50. Therefore, this reason fails to meet the specific and legitimate standard. The ALJ will address Dr. Genthe's opinion on remand.

### D. Remaining Opinions

Plaintiff also challenged the ALJ's treatment of the opinions provided by Janis Lewis, Ph.D., Philip Barnard, Ph.D., Aaron Burdge, Ph.D., Luci Carstens, Ph.D., Christmas Covell, Ph.D., and John Robinson, Ph.D. ECF No. 14 at 12-18. Considering the case is remanded for the ALJ to make a new step two determination and address the opinions of Dr. Crank, Dr. Dougherty, and Dr. Genthe, the ALJ will also readdress the remaining opinions upon remand.

### 4. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 14 at 18-21.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## REMEDY

Plaintiff urges the Court to apply the credit-as-true rule and remand this case for an immediate award of benefits. ECF No. 14 at 18.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would

serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence was credited as true, the ALJ would be required to find the claimant disabled on remand, we remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even when the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the first and third prong of the credit-as-true rule are not satisfied because the opinions of Dr. Crank and Dr. Genthe address Plaintiff's substance abuse as the potential cause of Plaintiff's symptoms. Therefore, even if the opinions were credited as true, the ALJ would not be required to award benefits. The ALJ would instead be required to proceed through the five-step sequential evaluation process a second time to properly address the limitations resulting from Plaintiff's substance abuse in accord with S.S.R. 13-2p. Therefore, the case is remanded for additional proceedings consistent with this order.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part,** and the case **REMANDED** for additional proceedings consistent with this order.

3. Application for attorney fees may be filed by separate motion.

//
//
//
//

1  The District Court Executive is directed to file this Order and provide a copy
2  to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff**
3  and the file shall be **CLOSED**.

DATED April 18, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION - 17